Oral argument is not to exceed 15 minutes per side. Ms. Marcus for the appellant. Good morning. May it please the court. I'd like to reserve three minutes of my time for rebuttal. Sorry, I'll try to speak as loud as I can. I'm losing my voice. I'm Meredith Marcus on behalf of Plaintiff Appellant Michael Biestek. In this case, the administrative law judge's own medical expert, Dr. Burns, initially offered testimony as to the residual functional capacity that was based exclusively on the objective evidence. And we know this because on cross-examination, he was asked, did you previously have reviewed the transcript as to Biestek's subjective testimony, his remand hearing, his initial hearing testimony? And Dr. Burns said no. However, on cross-examination, when asked about Biestek's subjective symptoms, Burns continues to concede that such symptoms are possible or reasonable. In particular, Burns stated that Biestek had rather extensive treatment. There were no issues of noncompliance in the file, and he received only temporary benefit to the type of treatment that was provided. And significantly, when asked about the statement that Biestek needed to lie down between 8 and 10 hours of a day and whether such treatment or such subjective symptoms were reasonable to alleviate the back pain, Dr. Burns stated that it would be reasonable. However, in reviewing the administrative law judge's decision, nowhere does the administrative law judge explain the fact that her credibility assessment and her weight afforded to Dr. Burns deviate significantly from Dr. Burns' testimony that was elicited on cross-examination. On cross-examination, Dr. Burns is essentially acknowledging that when he considers the combination of the objective evidence and the subjective testimony, that such combination between the two is reasonable. And when looking at 20 CFR 4041529, which is the regulation that assesses subjective pain complaints, it looks to the reasonability of the evidence between the subjective and objective testimony. So in this case, we have Dr. Gunayem on the one end, who did offer differing testimony as to listing, but stated that the subjective evidence was reasonable, and Dr. Burns, who on cross-examination likewise conceded that the subjective testimony, when he was confronted with it, was reasonable. And one area in terms of the subjective testimony that I did want to touch on that I think might have been overlooked in the district court below was this need to lie down that I just highlighted. Dr. Burns, when offered the statement that BizTech is lying down 8 to 10 hours a day to alleviate pain from the lower back, said, yes, it's reasonable. But likewise, BizTech testified at his initial hearing and his remand hearing to the need to lie down throughout the workday. This is at the record at page ID 882 and page ID 846 through 47. And in at least three objective records, there's reference to BizTech's need to lie down throughout the workday. I'm sorry, lie down throughout the day or put a pillow in between his legs to alleviate the back pain. That's at 538, it's at 550, and at 704. Dr. Ghanayem, when asked about the subjective testimony and the need to lie down at 964, said that was consistent with the pathology and reasonable. And Dr. Wright, BizTech's own treater, put in the residual functional capacity that he completed on the first page that the need to lie down would alleviate back pain at the record at 1962. And why this is significant is in the administrative law judge's decision, it is entirely devoid of any reference to the need to lie down. It's not mentioned when summarizing the medical opinions. It's not summarized when addressing BizTech's subjective testimony. So in this case, there's no evidence in the decision that the administrative law judge considered it or why she rejected it. And in BizTech's reply brief, he cites to the case of Hurst v. Secretary out of the Sixth Circuit, where there it was found a failure to consider the record as a whole could undermine the commissioner's conclusion. And in that case, the facts are different, but the court found that the combination of lay testimony and medical evidence may establish evidence of disabling pain. So it's BizTech's contention that the administrative law judge here erred in failing to ignore or address an entire line of evidence that's consistent with BizTech's claim of disabling pain. And the administrative law judge, under the case law that exists, was required to minimally articulate her reason for either ignoring it or rejecting it, which she failed to do in this matter. So now turning to the vocational expert testimony, the vocational expert significantly did testify to the fact that she was asked about off-task and stated that an individual who was off-task would need to remain at the workstation throughout the workday. So considering the fact that multiple different treaters and BizTech has reported the need to lie down, and the vocational expert stated that there would be no accommodation to lying down, the vocational expert's testimony, likewise, is consistent with the finding of disability in this case. But turning to the vocational expert testimony, So the vocational expert was asked on cross-examination, there was some questions as to off-task behavior. There was no question as to lying down. She stated that there would be a 20 percent off-task. 10 percent off-task would be for scheduled work absences, such as the lunch break or the two 15-minute breaks typically provided in unskilled work environments. And the remaining 10 percent off-task, an individual would have to be sitting at their workstation. They couldn't get up and move away from the workstation. They just would be losing concentration or not performing as to performance standards. So I think it's implied in the testimony that this individual wouldn't be able to be lying down or doing his stretches throughout the workday. But as to the cross-examination and the foundation of the vocational expert's testimony, as I think the briefs show, there's no Supreme Court case on the issue of cross-examination and vocational expert opinions and what's required. But I think the Supreme Court case of Richardson v. Prelis should be instructive in this case. It dealt with the issues of the Administrative Procedure Act versus the Social Security Act and stated that they didn't think that the two varied much with regard to cross-examination and that in terms of cross-examination, a party should have the ability to do it in order to elicit a full and true disclosure of the facts. So in this case, it's our contention that BISTEC did not obtain a full and true disclosure of the facts that the vocational expert was using and that the administrative law judge then used to rule against BISTEC in this matter. So I think the briefs both parties can agree that the rules of evidence in this matter don't strictly apply. Those are the cases that are out of the Seventh Circuit that address Donahue v. Estrella and McKinney, those cases. However, the administrative law judge needs some evidentiary basis to rely on the vocational expert testimony. If you look at Social Security Rule 00-4P, Addressing Vocational Expert Evidence, it talks about reliability and the reliability of what the vocational expert is using to offer testimony. The fact that an expert is an expert alone should not justify unfettered reliance on such an opinion. And I think that's the case in the facts that exist in BISTEC and that's where the bottom line of the vocational expert testimony was questioned. The representative did not stipulate to the credentials of the vocational expert. The vocational expert makes clear that she's not relying on any publication to which BISTEC could go out and then obtain that record. She's not relying upon any evidence to which the administration under Social Security Rule 00-4P and the regulations... But it's not contradicting it either, right? That there's no evidence contradicting what the vocational expert had stated. Yes, however, at Step 5 of the sequential process, the burden shifts to the commissioner to establish that jobs exist in the national economy that someone with BISTEC's limitations could do based on reliable methods. So in this case, all we have is a vocational expert saying, I have 11 years of experience, I have reports, you can't see them. And I think that differs from the cases that were cited out of the Second Circuit and the cases in the Supplemental Authority. Those are cases where, first of all, a vocational expert, the representative stipulated to the qualifications, so said whatever follows is true, is essentially true. But also the vocational expert there was relying on publications like the Occupations and Employment Quarterly, which is something that the administration takes administrative notice of. And it was a question as to methodology. The representative and the vocational expert were questioning, were battling over the methodology of how the numbers were reached. In this case, there's no methodology because there's no foundation for where this is coming from other than you must accept what I'm saying is true. And I think further, the vocational expert at the end, it's addressed that the Dictionary of Occupational Titles is obsolete and the vocational expert states or concedes at the end of her testimony that the definition for bench assembler, for example, doesn't exist the way that the Dictionary of Occupational Titles described it, but those jobs still exist. So she's not... Say that again. So at the end of the testimony, the representative asks, would you agree that the Dictionary of Occupational Titles hasn't been updated since 1971? And she says yes. And she says that the definition that's listed in the Dictionary of Occupational Titles might not be the same, but these jobs are still out there. So even under Social Security Rule 00-4P, I would submit that that's a conflict between the Dictionary of Occupational Titles and the vocational expert's testimony. And the administrative law judge accepted that as true based on her experience and based on these confidential reports without probing any further into the conflict. Do you have anything to say about how the treating physician's testimony should be weighed in this case? As opposed to evaluators and non-treating? Well, I mean, under the regulation, treating physicians are supposed to be given afforded controlling weight unless their opinions are internally inconsistent or they differ from the substantial evidence in the file. So in this case, Dr. Wright's findings and his residual functional capacity is consistent with that of Dr. Ghanayem. And if you accept Dr. Barnes's testimony after confronted with subjective complaints, what a treating physician does is consider both the objective and subjective in treating an individual, then you can argue that Barnes's testimony is likewise consistent with Dr. Wright's source statement as well. Dr. Wright goes into detail of all the treatments that BizTech has tried and failed, and he justifies his residual functional capacity based in part on the objective findings and based in part on the subjective limitations, which Dr. Ghanayem, Dr. Wright, and Dr. Barnes have all consistently stated at the minimum are reasonable. All right. Thank you. May it please the Court, my name is Mike Henry and I represent the Commissioner of Social Security. Because there's a lot to get into, I'm just going to follow counsel's lead and try to address the arguments that she's focused on specifically. With regard to the argument about Dr. Barnes not considering the subjective complaints and the limitation for elevating legs or lying down, I would note that the context is very important here. Dr. Barnes acknowledged Mr. BizTech's report that lying down with his legs elevated would quote, make him more comfortable, and that's at page ID 973, and that his reports of pain were both possible and reasonable. But under the Commissioner's regulations, the residual functional capacity is the most that an individual can do despite his limitations. So in crafting the RFC assessment, it was more relevant for the ALJ to consider Dr. Barnes's opinions as to what Mr. BizTech actually could do than what would make him most comfortable. And Dr. Barnes did give a residual functional capacity assessment that was essentially consistent with the ALJ's, and it did not include the restrictions that counsel asked about during the hearing. Turning to the vocational expert testimony, as I understand it, Mr. BizTech's argument is essentially that vocational experts should be required to back up their knowledge and experience with hard data before ALJs can rely on their testimony. Now, this Court hasn't squarely addressed that proposed rule, but your prior decisions do provide a roadmap for you to decide that that level of scrutiny is not required. This Court has previously held that ALJs are free to rely on a vocational expert's knowledge and experience, and I would refer to the Sias, Kahn, and Barker cases cited in the Commissioner's brief. If a claimant is concerned that the vocational expert's testimony lacks sufficient foundation, then he's free to cross-examine the expert and to explain to the ALJ why he believes that that testimony... But they didn't get anywhere. They tried to, but she basically said, oh, my information's confidential. Well, I understand the concern, Your Honor, but the Commissioner doesn't want to encourage satellite litigation into an expert's body of experience, but there are ways to test the reliability of an expert's methodology and conclusions without actually requiring her to turn over her personal files. Just a few examples, counsel could have asked, how many employers have you done these surveys for? Did you personally visit the job sites? How many employees did you observe doing jobs with the specific limitations we're talking about? Did you keep track of the time that the employee was off task? Did you prepare a written report that documents these findings? Could you produce a copy if you had to? You don't think that she'd get the same answers? We don't know, Your Honor. That's not this case, because counsel tried several times to just get the documents without showing any sort of predicate or need for them, and the ALJ decided that that wasn't good enough and wouldn't require document production. But depending on the answers to questions like that, the ALJ and the claimant might be satisfied that there's a sufficient foundation, or conversely, the cross-examination could raise serious questions about whether the expert had a reliable basis for her testimony. Those are just a few examples of questions that might trigger further inquiry, and none of them require upfront production of the expert's personal files. Mr. Bistek's counsel, again, did not ask those types of questions. His argument, both at the hearing and in the post-hearing submissions, was essentially that the ALJ couldn't rely on Ms. O'Callaghan's testimony because there was no way to verify that she had actually done the job analyses and labor market surveys that she said she had done. So here, Mr. Bistek's counsel actually did have ample opportunity to cross-examine Ms. O'Callaghan and to make his case that the ALJ shouldn't rely on her testimony. He just didn't ask those types of questions. As outlined in the commissioner's brief, counsel repeatedly stated that Ms. O'Callaghan should be required to turn over her files, and she said that they were confidential. Now, the ALJ did not require production, but did give counsel latitude to continue questioning Ms. O'Callaghan, and she stopped them only because another claimant was waiting for a hearing. She stopped the questioning because there was another claimant waiting for a hearing. The hearing had run long. At that point, the ALJ offered to schedule a supplemental hearing, and counsel declined. And this is at page ID 940 and 941. Well, I mean, I don't need to continue the hearing at this point. I mean, I just, you need some additional information, and we're going to get some information. I could give you closing comments and a closing letter, a closing memo. Mr. Biztek's counsel actually submitted three post-hearing letters addressing the vocational expert testimony and his own vocational expert opinion from Lee Knutson in an attempt to rebut Ms. O'Callaghan's testimony. Mr. Knutson opined that Mr. Biztek would not be able to do three of the jobs that were discussed at the hearing, but all three of those jobs proved to be non-factors because the ALJ found that Mr. Biztek could do different jobs based on different limitations, and Mr. Knutson did not address the two sedentary jobs that Ms. O'Callaghan had identified as suitable at the hearing. I'd also note that to support his own vocational opinion, Mr. Knutson offered his resume, nothing else. Taken together, the post-hearing submissions and the questions at the hearing show that this was essentially a phishing expedition. Mr. Biztek asked for documents to back up the expert's testimony, but never explained, even in the post-hearing submissions, what he hoped to find in that data or how he planned to use it to undermine Ms. O'Callaghan's testimony. In other words, Mr. Biztek is suggesting that vocational experts should be required to do what no other experts are required to do in social security cases, and that's to put all of their experience into writing so that claimants can pick through it for flaws. This Court doesn't need to go that far to ensure that vocational expert testimony is not conjured out of whole cloth. Other courts, like the Second Circuit and Brault, have held that the substantial evidence standard is flexible enough to allow courts to review the entirety of the vocational expert's testimony without requiring ALJs to hold essentially a mini-trial on their knowledge and experience. Now, Mr. Biztek actually cited Brault in his reply brief for the proposition that vocational expert testimony must have foundational support, but Brault, in later cases, cited in the Rule 28J letter that I submitted, actually hold that the expert's knowledge and experience are the foundational support, and showing that their testimony is conjured out of whole cloth requires more than just demanding documents with the vague hope that there might be something in there to trip up the VE. In Brault, the expert's testimony was sufficiently tested where counsel cross-examined him about his process and submitted a post-hearing brief arguing that the methodology was flawed. In McIntyre v. Colvin, the Second Circuit held that the ALJ could rely on the expert's professional experience and clinical judgment where it was, quote, not undermined by any evidence in the record. And again, Mr. Biztek hasn't pointed to anything that undermines Ms. O'Callaghan's testimony about the availability of sedentary bench assembler and sorter jobs. He's simply arguing that the ALJ needed to corroborate her testimony to make sure it wasn't fabricated. So what he's looking for isn't foundation, which Ms. O'Callaghan provided by identifying her sources. He's seeking proof that those sources actually exist. And that's what brings us back to this Court's decision in Barker v. Shalala, when the issue is whether the vocational expert is credible as a witness, then the ALJ has broad discretion to decide whether or not to believe her. For a factually similar case, I would invite this Court to look at Duggan v. Astrew, the Second Circuit decision cited in the Rule 20HA letter. In that case, the vocational expert said that he had relied on labor market surveys that were confidential and that he couldn't release them, and that's what happened here. And just like here, the ALJ did not require their production. The claimant's attorney argued error, and applying broad, the Court said that the vocational expert was not required to identify the sources with any greater specificity, nor was he required to turn over the confidential files. So to kind of summarize the Commissioner's point, this Court should follow Brault's reasoning in the Second Circuit, because Brault does support the position that vocational expert testimony can't be conjured out of whole cloth. The parties don't dispute that. But Brault does not support the on-demand production rule that Mr. Biztek proposes. Instead, it endorses a case-by-case review for substantial evidence. And substantial evidence in this context comes down to this. Was Ms. O'Callaghan's testimony such relevant evidence as a reasonable mind might accept as adequate to support a conclusion? And here it was reasonable for the ALJ to accept Ms. O'Callaghan's sworn testimony about the availability of sedentary bench assembler and sorter jobs when Mr. Biztek failed to provide any argument or evidence that those jobs were not available, and his only real objection was that she couldn't be taken at her word. That was the ALJ's call to make, and she made that call only after giving Mr. Biztek numerous opportunities to be heard. So this Court should find that the ALJ's reliance on Ms. O'Callaghan's testimony was proper. If the Court doesn't have any questions on other issues, the Commissioner will rest on her brief. Do you have any questions, Jessica? No, sir. Well, first, I want to touch on the second surrogate cases, the issue that was noted in the supplemental authority, because I think that those cases are distinct from this case. In Brault, the vocational experts stipulated to the credentials. In Brault, the representative never asked for the data and materials at the hearing. And in Brault, the individual, the representative only raised the issues of Donahue and McKinney up at the appellate court, so there was an issue as to whether those arguments were waived at the district court below. In Dugan, out of the second surrogate that came out of Brault, while it was a confidential study, the district court case explains that it was based on 58 vocational consultants who had come together and, based on the dictionary of occupational titles, conducted a survey specifically for the Bureau of Labor Statistics, which is a publication to which the administration takes administrative notice of. So this is clearly something that the representative could have contacted the Bureau of Labor Statistics for, if they wanted to obtain that material. I do think, in the hearing transcript, the representative makes two points. At the record of 936, the attorney says, while I'm asking what she has to support the testimony, since there's no publication, apparently there's no article, there's no theory. And then again, he states, with respect to the confidentiality, you can take out the names, it's the substance of these reports that I'm looking for at the record at 937. So he does go further in the hearing transcript than just say, give me the reports. He's saying, give me some foundation to which the administrative law judge continues to state, I've noted your objection, and continues on with her line of questioning or continues on letting him question, but not get the foundation of the testimony to which the vocational expert's asking. And finally, what the commissioner is saying is that we, in any case, should just accept the vocational expert at their word, unless the representative or the claimant provides some alternative evidence. As to the vocational expert's theory, first of all, that's shifting the burden back onto the plaintiff or the claimant at step five, which is contrary to the regulations. But if you look at the case of Haddock v. Upfel, which is what Social Security Rule 00-4P came from, they specifically say that they are trying to avoid such a scenario, because it would create a satellite litigation where it would put the onus back on the claimant in order to continue to establish that this vocational expert's testimony is incorrect. Richardson v. Prowlis specifically states that this should be understandable for layman's terms. So if an individual is hearing confidential and based on my experience, it should trigger some sort of line of questioning from the administrative law judge. We're not asking for the methodology, we're not asking for the reports to be disclosed, but at least some sort of line of questioning that should have been conducted as to the substance behind what the vocational expert's testifying to. When you distill through all of it, are you saying that the only way the ALJ could have found that he had a residual capacity that fit with work was to find that he only had to be on task 80% of the time? Well, I'm saying that the vocational expert has deviated from the Dictionary of Occupational Titles. It's not in the Dictionary of Occupational Titles. It's not in the dictionary? Off-task, sit-stand option, or the cane. And then her later testimony is that even the description is not correct as to bench assembly, but those jobs still exist. So BizTech can hypothetically do the jobs the administrative law judge finds if the administrative law judge accepts the fact that these jobs exist absent deviation from the dictionary and no recognized publication. I finally would note that it was noted that the vocational expert that the representative used only submitted his resume, and that's all that's in the file with respect to the vocational expert that testified at this hearing as well. There was no probing into her experience as well. Do you have anything else, Judge Cook? No, thank you very much.